**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JUSTIN ANTONIO HUTCHINSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-78** |
| **DANIEL FLEISCHMAN (WARDEN), ST. TAMMANY JAIL, ET AL.** | **SECTION "A"(4)** |

**REPORT AND RECOMMENDATION**

Before the Court is a **Motion to Dismiss** (ECF No. 18) filed by defendants Dr. Jose Ham and Dr. Samuel Gore seeking dismissal of plaintiff Justin Antonio Hutchinson's claims of medical indifference asserted in his *pro se* 42 U.S.C. § 1983 complaint.  The motion and underlying matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2).  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

I.     <u>**Background**</u>

A.     <u>**Plaintiff's Complaint**</u>

Hutchinson was a pretrial detainee housed in the St. Tammany Parish Jail ("STPJ") at the time of the filing of this complaint.  ECF No. 5-1, at 2, ¶I(A).  He was later transferred to the Jefferson Parish Correctional Center ("JPCC") where he remains housed on other criminal charges.  ECF No. 4.  Hutchinson named as defendants St. Tammany Parish Sheriff Randy Smith, St. Tammany Parish District Attorney Warren Montgomery, STPJ Warden Daniel Fleischman, Dr. Jose Ham and Dr. Samuel Gore.  ECF No. 5-1, at 4, ¶III(B)-(C).

Hutchinson's claims can be divided to address claims against the Sheriff, District Attorney, and Warden related to his arrest in St. Tammany Parish and detention in STPJ and claims against Drs. Ham and Gore related to his medical care at STPJ.

### 1.    Claims Related to Arrest and Detention

Hutchinson alleges that on or about December 29, 2015, he was arrested in St. Tammany Parish on charges of felon in possession of a firearm, armed robbery, and attempted second degree murder.  ECF No. 5, at 4, ¶IV; ECF No. 5-1, at 6, ¶IV(C).  Although he claims that he was not properly rebooked on the armed robbery charge, he was found not guilty of all charges on January 23, 2020, after spending almost five years in jail awaiting trial in violation of his constitutional rights.  ECF No. 5, at 4, ¶IV; ECF No. 5-1, at 6-7, ¶IV(C).

He also claims that, during that time, his rights also were violated when Sheriff Smith released his name and address to the public, which "assassinated his character" and caused him to be publicly slandered.  ECF No. 5, at 4-5, ¶IV; ECF No. 5-1, at 7.  He further alleges that Sheriff Smith and his police department falsified police reports to have him arrested for these crimes he never committed.  ECF No. 5, at 4-5, ¶IV; ECF No. 5-1, at 7.

Hutchinson alleges that District Attorney Montgomery prosecuted him on the "bogus" charges in threat to his life and liberty and in violation of his due process and speedy trial rights.  ECF No. 5, at 5, ¶IV; ECF No. 5-1, at 7-8.  While he also indicates that he remained in jail after his acquittal until now, that was because of a Jefferson Parish hold or charge which he is now facing and which is not part of this lawsuit.

He further alleges that Warden Fleischman "failed to protect [him] while in his custody." ECF No. 5, at 5, ¶IV.  He claims that he has high blood pressure caused by the food in the prison. ECF No. 5, at 5, ¶IV; ECF No. 5-1, at 7-8.  He also claims he did not have sufficient recreational

yard time in sunlight which has harmed his vision. ECF No. 5, at 5, ¶IV; ECF No. 5-1, at 7-8. He also claims that his hand reinjury would not have happened if he had not been falsely imprisoned. ECF No. 5-1, at 6, ¶IV(D).

### 2.    Claims Related to Medical Care

Hutchinson named Dr. Ham as a defendant in his role as head doctor at STPJ. ECF No. 5-1, at 2. He named Dr. Gore as a "follow up" doctor at STPJ. *Id*. at 4. Hutchinson alleges that, upon his arrival in STPJ on December 29, 2015, he was placed in cell A107T. ECF No. 5, at 4, ¶IV; ECF No. 5-1, at 5-6, ¶IV(B)-(C). That same night, he was in an altercation with a DOC inmate housed with the pretrial detainees. ECF No. 5, at 4, ¶IV; ECF No. 5-1, at 6, ¶IV(D). He alleges that he reinjured his dominant left hand. He claims that he previously had surgery for a left scaffold fracture on that hand, and he was still healing from it.

Hutchinson alleges that Dr. Ham and Dr. Gore failed to properly treat his injuries caused by the violence in STPJ. ECF No. 5, at 5, ¶IV  Hutchinson asserts that the STPJ medical department refused him any medical treatment after the December 29, 2015, altercation. ECF No. 5, at 4, ¶IV; ECF No. 5-1, at 6, ¶V. He claims he did not receive an x-ray until almost one year after the altercation and after he filed several sick call and requests forms and his family called the jail. The STPJ medical department eventually sent him to the hospital and he eventually had surgery on the hand. He claims, however, that his hand never healed properly because of "the trauma, pain and suffering over a period of time, malpractice…" ECF No. 5, at 4, ¶IV; ECF No. 5-1, at 6, ¶V. He further claims that he now has other problems with the hand and needs additional surgery. He indicates that he has in his left hand carpel tunnel syndrome, arthritis, and nerve damage. ECF No. 5-1, at 8. He claims this limits use of his dominant hand and ability to work certain jobs. *Id*.

With his complaint, Hutchinson provides two copies of one administrative grievance form about his medical care, dated November 1, 2021. ECF No. 5-1, at 15-16, 18-19. In the grievance, he explains that, after the altercation, the medical staff did not provide him with treatment for his reinjured hand except an ice pack and ibuprofen. *Id*. at 15. He claims that, "after suffering for 2 years with pain and a bone that was damage[,] I notified that the medical department on several outgoing sick calls" for which nothing was done. He indicates that STPJ sent him for surgery, but it "did not take properly and did not heal correctly due to the fact that the medical's dept. (<u>failure</u>) to react on my situation." (emphasis and parentheses in original) *Id*. at 15.

Hutchinson also attached a grievance response signed by Warden Fleischman on May 17, 2021; however, it is addressed to and signed by a completely different inmate named Eugene McKnight and has no apparent bearing on this case. *Id*. at 17.

### 3.    <u>Relief Sought</u>

As relief, Hutchinson seeks $224,800 in lost wages, $1 million in monetary damages for mental anguish, pain, and suffering, and $1 million in punitive damages for slander and wrongful imprisonment. ECF No. 5, at 5, ¶V. In addition, he requests that these monetary damages include payment for violation of his due process rights, for the false police report, and physical damage to his hand. ECF No. 5-1, at 6, ¶VI. He also requests that he be sent to a bone specialist to have his hand properly repaired. *Id*.

### B.    <u>Motion to Dismiss filed by Dr. Ham and Dr. Gore (ECF No. 18)</u>

In their motion, Drs. Ham and Gore move to dismiss Hutchinson's claims against them for failure to state specific claims against each of them and because any medical malpractice claims are premature. ECF No. 18-1, at 1. The defendants argue that Hutchinson has "lumped" them together without stating specific factual allegations or personal involvement for either of them

4

separately.  *Id*. at 2-3.  Defendants provide details from Hutchinson's STPJ medical records to outline the medical care they assert that he did receive during his incarceration and to generally reference potential other sources for his hand injuries, *i.e.* "several fights."  *Id*. at 4-6.  The defendants also contend that the fact that he concedes that he received an ice pack and ibuprofen after the fight and had x-rays taken one year after the altercation refutes his assertion of deliberate indifference.  *Id*. at 7.  Defendants further aver that any claims of malpractice under state law are premature.  *Id*. at 7-8.

Hutchinson has not filed an opposition to defendants' motion.

## II.    Standards of Review

### A.    Statutory Frivolousness Review

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)).  It lacks an arguable factual basis only if the facts alleged are "clearly

baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### B.    Motions Under Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint if it fails to state a claim upon which relief may be granted. To survive a motion to dismiss, the plaintiff must plead in the complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Moreover, "'[f]actual allegations must be enough to raise a right to relief above the speculative level,'" and "[t]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Guidry*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *Bell Atl. Corp.*, 550 U.S. at 570). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

To determine whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as stated above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). For a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See Id*.

The United States Fifth Circuit Court of Appeals has held that, when reviewing *pro se* complaints, the court must employ less stringent standards while still guided by the *Iqbal* pleading requirements. *High v. Karbhari*, 774 F. App'x 180, 182 (5th Cir. Jun. 12, 2019). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In *Taylor v. Gibson*, 529 F.2d 709 (5th Cir. 1976), the Court further explained this standard in the prisoner context:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided [to] the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Id.*, 529 F.2d at 713-14. Because of this, before dismissing a prisoner complaint under Rule 12(b)(6), a district court ordinarily should give the *pro se* litigant an opportunity to amend. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994); *accord Bruce v. Little*, 568 F. App'x 283, 285 (5th Cir. 2014).

III.    <u>**Frivolousness Review**</u>

A.    <u>**§ 1983 Claims Against District Attorney Montgomery**</u>

Hutchinson alleges that District Attorney Montgomery delayed pursuit of the "bogus" charges against him which he claims resulted in his wrongful imprisonment after his arrest on December 29, 2015, until his acquittal on January 23, 2020. The District Attorney, however, enjoys absolute prosecutorial immunity from civil suit for damages under § 1983 for his actions in initiating and pursuing a criminal prosecution through the judicial process. *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("[A] state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution" was not subject to suit under Section 1983"); *see also Brooks v. George Cnty.*, 84 F.3d 157, 168 (5th Cir. 1996) ("Actions which are related to the judicial process fulfill the prosecutor's advocatory function and are considered absolutely immune from suit"). The immunity afforded prosecutors is absolute, not qualified, and protects a prosecutor from being sued in connection with his duties altogether, regardless of the merits of the claims against him. *See Lucas v. Parish of Jefferson*, 999 F. Supp. 839, 842 (E.D. La. 1998). Absolute immunity protects prosecutors from all liability even when they acted "maliciously, wantonly, or negligently." *See Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016) ("Absolute immunity shields prosecutors even when they act maliciously, wantonly, or negligently."); *Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985).

Hutchinson sued District Attorney Montgomery for prosecuting the charges against him which, according to Hutchinson, were bogus as shown by his acquittal. The District Attorney simply is not subject to suit and is instead immune from suit under § 1983 on these grounds.

For these reasons, Hutchinson's claims against District Attorney Montgomery should be dismissed pursuant to 28 U.S.C. § 1915(e) and § 1915A as frivolous, for failure to state a claim for which relief can be granted, and for seeking relief against an immune defendant.

**B.    § 1983 Claims of False Arrest, False Imprisonment, and Malicious Prosecution**

Among his claims against Sheriff Smith and Warden Fleischman, Hutchinson alleges that he was arrested on criminal charges on December 29, 2015 that were false or unfounded and for which he was wrongfully imprisoned for four years before his acquittal on January 23, 2020. Broadly construing his *pro se* claims, he asserts that he was falsely arrested, unnecessarily or falsely imprisoned, and wrongfully or maliciously prosecuted.  Hutchinson's claims have prescribed and can be dismissed under 28 U.S.C. § 1915(e), § 1915A.

The Court may raise the limitations or prescription issue *sua sponte* in its frivolousness review of a civil suit filed by a prisoner. *Wilke v. Meyer*, 345 F. App'x 944, 945 (5th Cir. 2009); *Lopez-Vences v. Payne*, 74 F. App'x 398 (5th Cir. 2003) (citing *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993)).  "'Dismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations.'" *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006) (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999)).  In this case, the untimeliness is clear on the face of the pleadings.

For a § 1983 action, the court looks to the forum state's personal-injury limitations period. *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).  In Louisiana, that period is the one year prescriptive period allowed under La. Civ. Code Ann. art. 3492. *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989); *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980).  Federal law, however, determines when a § 1983 claim accrues. *Moore*, 30 F.3d at 620.

The Fifth Circuit explained that, following the Supreme Court's ruling in *Wallace v. Kato*, 549 U.S. 384 (2007), accrual of claims of false arrest/imprisonment and for malicious prosecution are different:

> The Supreme Court drew a clear distinction between "false arrest," which consists of detention without legal process, and "unlawful detention," which forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process.

*Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 391 (5th Cir. 2020) (emphasis original, citations and quotation marks omitted). "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more." *Wallace*, 549 U.S. at 390. The limitations period for a false arrest/imprisonment claim begins to run at the time when legal process is initiated, *i.e.* the arrestee is brought before a tribunal, which puts an end to the false imprisonment. *Bradley*, 958 F.3d at 391; *Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018). By contrast, the limitations period for a malicious prosecution claim does not accrue until the prosecution ends in the plaintiff's favor. *Id*. at 492.

## 1.    False Arrest and False Imprisonment

Hutchinson has asserted his claims of false arrest and false imprisonment against defendants Sheriff Smith and, under a broad reading, Warden Fleischman.[1] The "statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397. The same is true of false imprisonment, which also is deemed to end when the arrestee is brought for initial

---

[1] Any such claim against District Attorney Montgomery would be dismissed based on immunity as discussed above.

appearance. *Villegas v. Galloway*, 458 F. App'x 334, 338 (5th Cir. 2012) (". . . false imprisonment ends when the defendant is held pursuant to legal process, such as when he is arraigned or bound over by a magistrate. Here, any claim of false imprisonment arising out of the allegedly unlawful search and seizure accrued in 2003, when a magistrate judge found probable cause to detain Villegas pending trial.") (citing *Wallace*, 549 U.S. at 389-90).

Under Louisiana law, if a person is arrested pursuant to a warrant, the determination of probable cause and the subsequent detention of the arrestee is made at the time that the warrant is issued. La. Code Crim. Proc. art. 202. Persons arrested without a warrant are entitled to a probable cause determination by a state court magistrate within 48 hours of their arrest and the failure to afford such a determination results in the immediate release of the arrestee. La. Code Crim. Proc. art. 230.2. In the absence of any allegations to the contrary, Hutchinson was either arrested with a warrant on December 29, 2015, or otherwise afforded an initial hearing within 48 hours of his arrest, or no later than December 31, 2015, at which probable cause for his arrest and continued detention must have been found.

Thus, Hutchinson's false arrest and imprisonment claims accrued no earlier than December 31, 2015, when the state court would have determined that there was probable cause to arrest and prosecute him. Even if that initial appearance occurred at a later date, there is no question, as will be discussed later in this report, that Hutchinson waited almost six years after his arrest and detention in 2015 to file his claims of false arrest and false imprisonment.

Nevertheless, using the 48-hour date of December 31, 2015, Hutchinson would have had one year from that date, or until Tuesday, January 3, 2017,[2] to file a civil rights complaint

---

[2] The one year ended on Saturday, December 31, 2016, leaving the final day of any filing period to fall on the next business day, Tuesday, January 3, 2017, excluding the New Year's Day holiday. *See* Fed. R. Civ. P. 6.

challenging his arrest and imprisonment. Hutchinson is deemed to have filed this complaint under the applicable mailbox rule on December 13, 2021,[3] almost five years after the limitations period ended.

Hutchinson's claims of false arrest and false imprisonment have prescribed and are subject to dismissal as barred by the statute of limitations. Therefore, for purposes of 28 U.S.C. § 1915(e), Hutchinson has failed to state a claim for which relief can be granted against Sheriff Smith and Warden Fleischman.

## 2.  Malicious Prosecution

Hutchinson also has asserted a claim of malicious prosecution,[4] which envelop his allegations of arrest/detention without probable cause on false charges, against defendants Sheriff Smith and Warden Fleischman.[5] As mentioned previously, the limitations period for a malicious prosecution claim does not accrue until the prosecution ends in the plaintiff's favor. *Winfrey*, 901 F.3d at 492. Hutchinson alleges that he was acquitted on the charges of felon in possession, armed robbery, and attempted second degree murder on January 23, 2020. He therefore had one year

---

[3] In the *pro se* prisoner context, a "mailbox rule" applies which means that the date when prison officials receive the pleading from the prisoner for delivery to the court is considered the time of filing for limitations purposes. *United States v. Petty*, 530 F.3d 361, 363 & n.1 (5th Cir. 2008); *Stevenson v. Anderson*, 139 F. App'x 603, 604 (5th Cir. 2005); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The prisoner bears the burden to make a preliminary showing that he is entitled to the benefit of the prison mailbox rule. *See United States v. Holt*, 650 F. App'x 170 (5th Cir. 2016). In the absence of evidence to the contrary, the federal courts generally presume that the inmate's signature date on the complaint is the date he gave it to prison officials for mailing to the courts. *Accord Toomer v. Cain*, No. 09-7446, 2010 WL 4723365, at *1 n.3 (E.D. La. Jul. 30, 2010) ("Generally, a court will look to the date a prisoner signed his pleading as the earliest date the pleading could have been provided to prison officials for mailing.") Hutchinson signed his original, deficient petition on December 13, 2021.

[4] Although previously not recognized in Fifth Circuit precedent, the Supreme Court has held that malicious prosecution is a viable Fourth Amendment claim under § 1983 after favorable termination of a criminal prosecution. *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022); *see, contra, Anokwuru v. City of Houston*, 990 F.3d 956, 964 (5th Cir. 2021) ("There is no freestanding right under the Constitution to be free from malicious prosecution.") (citing *Morgan v. Chapman*, 969 F.3d 238, 245-46 (5th Cir. 2020), and *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003) ("[C]ausing charges to be filed without probable cause will not without more violate the Constitution. So defined, the assertion of malicious prosecution states no constitutional claim.")).

[5] Again, any such federal claim against District Attorney Montgomery would be dismissed based on prosecutorial immunity as discussed above.

from that date, or until Monday, January 25, 2021,[6] to file his civil rights complaint for malicious prosecution.  This civil rights complaint is deemed filed under the mailbox rule on December 13, 2021, which was more than 10 months *after* the limitations period expired on January 25, 2021.

His malicious prosecution claim also has prescribed and is subject to dismissal as barred by the statute of limitations.  Therefore, for purposes of 28 U.S.C. § 1915(e), Hutchinson has failed to state a claim for which relief can be granted against Sheriff Smith and Warden Fleischman for malicious prosecution under the Fourth Amendment.

### C.    Slander and Damage to Reputation

Hutchinson alleges that Sheriff Smith slandered and caused damage to his reputation when the Sheriff publicly released his name and address in connection with his false arrest on the unfounded criminal charges at issue.  He also asserts that his continued detention perpetuated the destruction of his reputation and other work and familial ties.  However, slander and defamation claims are not cognizable under § 1983 and his claims are therefore frivolous.

Instead, defamation claims do not involve the deprivation of any right, privilege, or immunity secured by the Constitution or laws of the United States.  *See Mowbray v. Cameron Cty.*, 274 F.3d 269, 277 (5th Cir. 2001) (allegations of slander by a former prisoner, resulting in public humiliation, scorn, and ridicule, do not state a claim under § 1983); *Cook v. Houston Post*, 616 F.2d 791, 794 (5th Cir. 1980); *Castillo v. Bowles*, 687 F. Supp. 277, 282 (N.D. Tex. 1988) (dismissing inmate's defamation claim against jail guards because, even if his allegations were true, plaintiff only alleged harm to his reputation, a claim not protected by the Constitution).  Further, the Fifth Circuit has held that a plaintiff's conclusory allegations that "slanderous

---

[6] The one year ended on Saturday, January 23, 2021, leaving the final day of any filing period to fall on the next business day, Monday, January 25, 2021.  *See* Fed. R. Civ. P. 6.

statements resulted in lost friendships, lost livelihood, lost time, and physical injuries are insufficient to state a claim under 42 U.S.C. § 1983." *Gill v. State of Tex.*, 153 F. App'x 261, 263 (5th Cir. 2005) (citing *Arnaud v. Odom*, 870 F.2d 304, 307 (5th Cir. 1989)).

For these reasons, Hutchinson's claims of damage to his reputation, and loss of familial relationships, etc., as a result of his arrest and prosecution are frivolous, and otherwise fail to state a claim for which relief can be granted and should be dismissed under 28 U.S.C. § 1915(e), § 1915A.

### D.    Failure to Protect

Hutchinson asserts that Warden Fleischman failed to protect him while he was in STPJ. ECF No. 5, at 5, ¶IV.  He provides no details or specific factual support for this conclusory claim. Instead, the claim is buried within his allegations that he was falsely imprisoned on false charges, as if the Warden somehow should have protected him from those charges.  Alternatively, and to afford Hutchinson's complaint a very broad reading, this claim may be directed at the overall conditions of his confinement in STPJ and the fact that he was attacked on his first night in the jail, on December 29, 2015.

"To prevail on a section 1983 failure to protect claim, the prisoner must demonstrate that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) (quoting *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998)).  Absent a "physical injury resulting from the prison officials' purported failure to protect," a failure to protect claim fails. *Jones*, 188 F.2d at 326; *Walzier v. McMullen*, 333 F. App'x 848, 851 (5th Cir. 2009). The conditions addressed by Hutchinson are his claims that the food at STPJ caused him to develop

high blood pressure, and the insufficient amount of outdoor recreation time has impacted the acuity of his vision. His conclusory claims are frivolous and should be dismissed.

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation omitted). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and 'must take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). Therefore, a prison official's deliberate indifference to an inmate's health, safety or serious medical condition constitutes a violation of the Eighth Amendment. *Farmer*, 511 U.S. at 834 (citations omitted).

To state a § 1983 claim based on a prison official's deliberate indifference to an inmate's health or safety, the inmate must prove both "objective exposure to a substantial risk of harm," and that "prison officials acted or failed to act with deliberate indifference to that risk." *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006). Deliberate indifference is established by showing that the prison official: (1) knew that the inmate faced a substantial risk of serious bodily harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 837; *Gobert*, 463 F.3d at 346. Deliberate indifference encompasses more than mere negligence on the part of prison officials. *Farmer*, 511 U.S. at 835. Instead, "[d]eliberate indifference is an extremely high standard to meet," and it requires a prisoner to show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (internal quotations omitted).

1.    **Protection Related to Food and Exercise**

The intentional indifference standards above must be considered with the fact that inmates have no *per se* protected right to regular outdoor exercise or activity.  *Flores v. Nueces Cnty.*, No. C-09-080, 2010 WL 2557775, at *11 (S.D. Tex. June 22, 2010) (quoting *Lewis v. Smith*, No. 00-31371, 2001 WL 1485821, at *1 (5th Cir. Nov. 13, 2001)).  However, extended periods without or denial of all outdoor exercise may raise constitutional concerns when shown to have impinged on the health or safety of the inmate.  *Hewitt v. Henderson*, 271 F. App'x 426, 428 (5th Cir. 2008); *Gemelli v. Louisiana*, No. 19-13424, 2020 WL 3317033, at *17 (E.D. La. Apr. 29, 2020), *report and recommendation adopted by* 2020 WL 3297078, at *1 (E.D. La. Jun. 18, 2020).  Furthermore, as to the food served, constitutional standards require only that prison authorities provide an inmate with "sufficient nutritional value to preserve health." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *Green v. Ferrell*, 801 F.2d 665, 770 (5th Cir. 1986) (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)).

In this case, Hutchinson has not alleged that any prison official, much less Warden Fleischman, was aware of his concerns about the food or recreation time, or that he reported to anyone that he was having blood pressure or vision concerns caused by the food or exercise opportunities he had at STPJ for there to be an allegation of intentional indifference.  In fact, Hutchinson mentions these claims only in passing in his complaint, almost as an afterthought to his complaints about being held in jail on alleged false charges.  He offers no timing for his concerns about food or recreation or any indication that he was regulating his diet or in a special housing assignment that restricted his outdoor activity.  He does not indicate that he notified prison officials or Warden Fleischman about his concerns.  He merely assumes that his blood pressure and non-specific vision concerns resulted from the conditions of his confinement.  He provides

nothing but conclusory statements that do not allege facts sufficient to assert an unconstitutional condition or deliberate indifference on the part of the STPJ officials or Warden Fleischman.

Hutchinson's conclusory claims as alleged are frivolous and fail to state a claim for which relief can be granted and should be dismissed pursuant to 28 U.S.C. § 1915(e), § 1915A.

### 2.    Protection Related to the December 29, 2015 Fight

For the sake of argument, the Court could assume that Hutchinson may be asserting that Warden Fleischman failed to protect him from the fight with another inmate on December 29, 2015. However, the claim would be prescribed.

As discussed above, accrual of a federal claim is a matter of federal law. *Nottingham v. Richardson*, 499 F. App'x 368, 375 (5th Cir. 2012); *see also Wallace*, 549 U.S. at 384. "Under federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Russell v. Bd. of Trustees*, 968 F.2d 489, 493 (5th Cir. 1992) (quoting *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987)). Based on Hutchinson's complaint, the failure to protect claim accrued the night he was injured in a fight with the inmate when he first arrived at the jail on December 29, 2015.

Applying Louisiana's one-year prescriptive period applicable to § 1983 claims, Hutchinson would have had one year from December 29, 2015, or until Tuesday, January 3, 2017,[7] to file a civil rights complaint against the STPJ Warden for failure to protect.[8] As with his other claims arising at that time, he did not meet that deadline. His complaint is deemed filed on December 13, 2021, which was almost five years after the deadline passed. His claims is prescribed and should

---

[7] The one year ended on Saturday, December 31, 2016, leaving the final day of any filing period to fall on the next business day, Tuesday, January 3, 2017, excluding the New Year's Day holiday. *See* Fed. R. Civ. P. 6.

[8] Warden Fleischman was not the Warden of STPJ in 2015; it was Gregory Longino. *See, e.g., Fabre v. Yoli*, No. 14-2220, 2015 WL 5773979, at *1 (E.D. La. Sep. 30, 2015).

be dismissed pursuant to 28 U.S.C. § 1915(e), § 1915A for failure to state a claim for which relief can be granted.

### E.    <u>Claims Against Dr. Ham and Dr. Gore</u>

Hutchinson alleges that Dr. Ham and Dr. Gore failed to provide him with adequate treatment for his injuries suffered as a result of the fight on December 29, 2015.  He claims that over the years he remained in STPJ, he was not seen timely by the medical department for his complaints or for services such as x-rays for his hand.  He claims that the medical department did not take him for an x-ray until one year after the incident despite him having filed several sick call complaints.  Although he acknowledges that he was eventually taken for surgery, he claims that his hand did not heal properly, and he now has residual nerve damage, arthritis, and carpel tunnel syndrome.  He also indicates that he is in need of additional surgery for these and other continued problems.

Recognizing the significance of Hutchinson's medical claims, the Court no less must resolve that his allegations are inadequate to state claims of medical indifference against Dr. Ham and Dr. Gore, individually.  In recent years, the federal courts have become acutely aware of the need for § 1983 plaintiffs to provide individualized factual claims in their complaints against named defendants who are referenced *en masse*.  The Supreme Court has instructed that, in a § 1983 claim, "a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." (emphasis added) *Iqbal*, 556 U.S. at 676.  A division of this Court recently commented on the need for plaintiffs to express their medical claims against prison medical personal on an individual basis, rather than as a treating group, to state an intentional medical indifference claim.

18

"Plaintiffs suing governmental officials in their individual capacities, however, must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional [sic] assertions." [*Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted) (first citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999); and then citing *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996)).] Moreover, plaintiffs may not lump Defendants together, without specifying separate factual allegations specific to each Defendant, as "referring to the Defendants collectively prevents the Court from drawing the inference that [one individual Defendant] personally (or any other individual Defendant) acted with subjective deliberate indifference." [*Zavala v. City of Baton Rouge/Par. of E. Baton Rouge*, No. 17-656-JWD-EWD, 2018 WL 4517461, at *15 (M.D. La. Sept. 20, 2018) (first citing *Sanchez v. Young Cnty.*, 866 F.3d 274, 281 (5th Cir. 2017); and then citing *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (Jones, J., dissenting)); *see also Phoenix ex rel. S.W. v. Lafourche Par. Gov't*, No. 19-13004, 2020 WL 3269114, at *11 (E.D. La. June 17, 2020) ("Most of the plaintiff's allegations improperly lump the defendants together and fail to allege which defendants knew of the substantial risk to [the pretrial detainee] and which defendants failed to take reasonable measures to respond to the substantial risk of suicide.").] Accordingly, Plaintiffs' conclusory allegations that lump [the prison nurse] in with other Defendants are insufficient to state a claim for deliberate indifference.

*Mixon v. Pohlmann*, No. , 2021 WL 6072501, at *9 (E.D. La. Dec. 23, 2021) (footnotes omitted, text placed in brackets).

Thus, "[i]t is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm." *Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020). Hutchinson has not done this. He provides no individualized claims against either Dr. Ham or Dr. Gore and no factual allegations about particular treatments or visits or actual, personal involvement by each doctor in his medical care at STPJ. He instead makes generalized claims that "the medical department" and "the St. Tammany Medical Department" ignoring his requests, delaying his care, and providing or not treatment for his hand. Dr. Ham and Dr. Gore are not held responsible under § 1983 for alleged constitutional violations by their subordinates on the medical staff. *See Alton*

*v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.").

Hutchinson's allegations and statements are not sufficient to state a non-frivolous claim against Dr. Ham or Dr. Gore individually for his medical care at STPJ between 2015 and his 2022 transfer out of that jail. *See*, ECF No. 4 (Change of Address). His claims against them should be dismissed pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e as frivolous and for failure to state a claim for which relief can be granted under § 1983.

### F.    <u>State Law Tort Claims</u>

Hutchinson alleges slander, defamation, and malicious prosecution as bases for his claims in this case. While these claims under § 1983 have been addressed above, the Court has not addressed the claims under state law. The same is true for Hutchinson's negligence and medical malpractice claims intwined in his federal claims of medical indifference. These claims based on negligence and other tortious acts are not sufficient to state a § 1983 claim. *See Estelle*, 429 U.S. at 106; *Gibson v. Collier*, 920 F.3d 212, 219-20 (5th Cir. 2019). To the extent Hutchinson intended to assert these and any other claims under state law, the claims would involve purely state law questions that are best and ordinarily left to the state courts to decide.

For the reasons above, Hutchinson's § 1983 claims should be dismissed and no basis for federal subject matter jurisdiction is otherwise reflected from the face of this complaint. Therefore, the Court has discretion either to decline or exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3). Considering the provisions of § 1367(c) and balancing the

relevant factors of judicial economy, convenience, fairness and comity,[9] the Court should decline

to exercise jurisdiction and dismiss without prejudice the state law tort or negligence claims.

## IV.    Defendant's Motion to Dismiss (ECF No. 12)

The defendants Dr. Ham and Dr. Gore filed a motion seeking dismissal of plaintiff's

medical indifference claims against them for failure to state a claim for which relief can be granted,

including grounds that, contrary to his allegations, he was provided consistent and adequate

medical care by the staff at STPJ. Defendants rely on Hutchinson's medical records to support

their motion to dismiss. ECF Nos. 18-2, 18-3. The medical records are not referenced or

incorporated in or attached to Hutchinson's *pro se* complaint. In addressing a similar Rule 12(b)(6)

motion accompanied by prison medical records, this Court advised defendants' (with the same

counsel) that "[n]ow is not the time to resolve factual disputes; the test at the pleadings stage

juncture is whether a claim has been stated, not proved." *Phoenix on behalf of S.W. v. Lafourche*

*Parish Gov't*, No. 19-13004, 2020 WL 3269114, at *9 (E.D. La. Jun. 17, 2020). The Court would

not consider those records without converting the defendants' Rule 12(b)(6) motion into a Fed. R.

Civ. Proc. 56 motion for summary judgment, with required notice of the conversion to the parties.

*Zantiz v. Seal*, 602 F. App'x 154, 160-161 (5th Cir. 2015).[10]

Nevertheless, for the reasons provided in this Report, Hutchinson's § 1983 claims,

including those brought against Dr. Ham and Dr. Gore, are frivolous and otherwise fail to state a

---

[9] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350-51 (1988); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Heggemeier v. Caldwell Cty., Tex.*, 826 F.3d 861, 872-73 (5th Cir. 2016); *Enochs v. Lampasas Cty.*, 641 F.3d 155, 158-59 (5th Cir. 2011); *Brookshire Bros. Holding v. Dayco Prod., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009); *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).

[10] *Zantiz* held that the prisoner's medical records could not be considered on motion to dismiss his claim of constitutionally deficient medical care because "[e]vidence that is outside the pleadings cannot be considered for a motion to dismiss" unless the motion is converted to one for summary judgment where defendants could "point[] to no cases where we have considered medical records at the motion to dismiss stage." *See also*, *Young v. McCain*, 760 F. App'x 251, 255-56 (5th Cir. 2019).

claim for which relief can be granted. In addition, the Court has no cause to exercise jurisdiction over Hutchinson's state law claims, including those against Dr. Ham and Dr. Gore. Thus, the motion filed by Dr. Ham and Dr. Gore before the Court could complete its statutorily required frivolousness review, is rendered moot by the findings and recommendations in this Report. The Rule 12(b)(6) motion filed by Dr. Ham and Dr. Gore should be dismissed without prejudice for that reason.

## V.   <u>Recommendation</u>

It is therefore **RECOMMENDED** that plaintiff Justin Antonio Hutchinson's 42 U.S.C. § 1983 claims against defendants St. Tammany Parish Sheriff Randy Smith, St. Tammany Parish District Attorney Warren Montgomery, St. Tammany Parish Jail Warden Daniel Fleischman, Dr. Jose Ham, and Dr. Samuel Gore be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e), § 1915A, and as applicable, 42 U.S.C. § 1997e, as frivolous, for failure to state a claim for which relief can be granted, and as to defendant Montgomery, for seeking relief against an immune defendant.

It is further **RECOMMENDED** that Hutchinson's state law claims of slander, defamation, malicious prosecution, negligence, and malpractice be **DISMISSED WITHOUT PREJUDICE** because the court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).

It is further **RECOMMENDED** that the Motion to Dismiss (ECF No. 18) filed by defendants Dr. Ham and Dr. Gore be **DISMISSED WITHOUT PREJUDICE** as moot.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[11]

     New Orleans, Louisiana, this __26th__ day of July, 2022.

**KAREN WELLS ROBY**<br>
**UNITED STATES MAGISTRATE JUDGE**

---

[11] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.